**Dated: July 29, 2010**
**The following is SO ORDERED:**

_____
George W. Emerson, Jr.
UNITED STATES BANKRUPTCY JUDGE

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TENNESSEE

_____

In re

VILLAGE GREEN I, GP                              Case No. 10-24178-GWE
a Nevada general partnership,

Debtor.                                          Chapter 11

_____

**MEMORANDUM OPINION GRANTING DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 363 AND 361, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 361 AND (III) SCHEDULING A FINAL HEARING PURSUANT TO RULE 4001 AND
DENYING MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

_____

This matter is before the Court on the motion of the Debtor, Village Green I, GP, a Nevada general partnership, ("Debtor") "(I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363 and 361, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 361, and (III) Scheduling a Final Hearing Pursuant to Rule 4001(c)" and the Response thereto filed by Federal National Mortgage Association ("Fannie Mae"), the Motion for Relief from the Automatic Stay filed by Fannie Mae, and Debtor's objection thereto.

## I. PROCEDURAL BACKGROUND

Debtor Village Green I, GP, filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on April 16, 2010. On May 18, 2010, the Debtor filed its "Motion for Conditional Use of Cash Collateral, (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363 and 361, and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 361 and (III) Scheduling a Final Hearing Pursuant to Rule 4001(c)" (the "cash collateral motion"), which was set for a hearing on June 3, 2010. On June 2, 2010, Fannie Mae filed its Response to the Debtor's cash collateral motion. At the hearing on June 3, 2010, the parties agreed to continue the hearing on the Debtor's motion, pending the future filing and setting of Fannie Mae's motion for relief from the automatic stay so that the hearing on the debtor's cash collateral motion would coincide with the motion for relief from the automatic stay. The parties have now filed supporting memoranda and a joint stipulation setting forth the facts and, for purposes of these two motions only, stipulating as to the authenticity and admissibility of the Exhibits listed therein.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G).

## II. FACTS

Debtor is a general partnership whose partners are EP Village Green Owner, LLC and Village Green II, GP. On the Debtor's Chapter 11 petition, the Debtor listed the location of its principal assets as "3450 Fescue Lane, Memphis, Tennessee, 38115-4184," which is the address of the Village Green Apartments. This is a single asset real estate case as defined in 11 U.S.C. § 101(51)(B), and Fannie Mae is the Debtor's only secured creditor.

On or about September 30, 2003, Village Green, LTD, the prior owner of the property, entered into a Multifamily Note (the "Note"), in the principal sum of $9,200,000.00, with American

2

Property Financing, Inc. That same day, Village Green, LTD, also executed a Multifamily Deed of Trust, Assignment of Rents and Security Agreement (the "Deed of Trust"), securing payment of the Note. The Deed of Trust, which encumbered the real property known as the Village Green Apartments, located at 3450 Fescue Lane, Memphis, Tennessee was also recorded with the Shelby County Register of Deeds that same day. Also on that date, American Property Financing, Inc. assigned and/or endorsed the Note to Fannie Mae along with all of its rights, title and interest as lender under the Deed of Trust. On October 13, 2003, a UCC Financing Statement was filed with the Shelby County Register of Deeds, setting forth Village Green, LTD. as debtor to Fannie Mae, secured party and covering certain real property as collateral. Village Green, LTD. also executed a number of collateral agreements ("Collateral Agreements") including a Replacement Reserve and Security Agreement, Assignment of Management Agreement, Operations and Maintenance Agreement, and a Completion Repair and Security Agreement, each of which were assigned to Fannie Mae.

On December 29, 2005, Debtor executed an Assumption and Release Agreement whereby Debtor assumed all of the obligations of Village Green LTD. as set forth in the Note, Deed of Trust and Collateral Agreements. The Assumption and Release Agreement was recorded with the Shelby County Register of Deeds. On that same day, the Debtor entered into a Master Lease Agreement with EP Village Green Operator, LLC ("Village Green Operator"), whereby Village Green Operator would collect rents, pay bills and remit net proceeds to the Debtor. Village Green Operator also entered into an Assignment of Leases and Rents, Security Agreement and Subordination of Master Lease, for the benefit of Fannie Mae as assignee, on December 29, 2005.

The Debtor and Fannie Mae have stipulated that there is no equity in the subject real

3

property. The value of the property listed on Debtor's Schedule A is $6,500,000.00 and the amount of Fannie Mae's claim on Schedule D is listed at $8,500,000.00 of which $2,000,000.00 is unsecured. Prior to the petition date, the Debtor was in default under the terms of the Note and Deed of Trust. The Debtor's monthly operating report for the month ending April 30, 2010 reflected that the Debtor's delinquent mortgage payments at the time of filing were $354,708.17. See Joint Stipulation of Facts, Docket No. 58, Ex.13, p.6.

At the hearing on the two motions, the parties conceded that the issue upon which both of their motions depend is whether or not the rents collected by Village Green Operator and paid to the Debtor are property of the Debtor's estate, and thus eligible as cash collateral, or whether the language of the Deed of Trust granted a pre-petition absolute assignment to Fannie Mae, effectively terminating the Debtor's interest in the rents. As admitted by Fannie Mae's counsel at the hearing on this matter, Fannie Mae's motion hinges upon the Debtor's lack of available cash collateral to effectuate a reorganization. Counsel for the Debtor conceded that its ability to formulate a plan and reorganize is dependent on the use of rents as cash collateral and that if the rents are not available as cash collateral, relief from the stay is appropriate.

The pertinent provisions of the Multifamily Deed of Trust, Assignment of Rents and Security Agreement ("Deed of Trust") are as follows:

> Page 1, Paragraph 3, "Borrower, in consideration of the Indebtedness and the trust created by this instrument, irrevocably grants, conveys, bargains, sells, confirms and assigns to Trustee, in trust, with power of sale, the Mortgaged Property, including the Land...TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Multifamily Note payable to Lender dated as of the date of this Instrument, and maturing on October 1, 2013, in the principal amount of $9,200,000.00 and all renewals, extensions and modifications of the Indebtedness, and the performance of the covenants and agreements of Borrower contained in the Loan

4

Documents. (emphasis in the original).

"(Paragraph) 1. Definitions. The following terms, when used in this Instrument (including when used in the above recitals), shall have the following meanings:...(s) 'Mortgaged Property' means all of Borrower's present and future right, title and interest in and to all of the following: ...(10) all Rents and Leases;..."

"(Paragraph) 3.  Assignment of Rents; Appointment of Receiver; Lender in Possession.
(a) ...Borrower and Lender intend this assignment of Rents to be immediately effective and to constitute an absolute present assignment and not an assignment for additional security only.  For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the Mortgaged Property," as that term is defined in Section 1(s).  However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument."

"(Paragraph) 30.  Governing Law; Consent to Jurisdiction and Venue.
(a) This Instrument and any Loan Document which does not itself expressly identify the law that is to apply to it, shall be governed by the laws of the jurisdiction in which the Land is located (the "Property Jurisdiction").  Ex. 2 to Joint Stipulation of Facts, No. 58.

A separate Assignment of Leases and Rents, Security Agreement and Subordination of Master Lease ("Assignment of Leases"), was executed by EP Village Green Operator, LLC, as assignor and Fannie Mae, as assignee, on December 29, 2005.  Ex. 9 to Joint Stipulation of Facts, Docket No. 58.  At the hearing on this matter, the Court heard proof that the Debtor is a general partnership whose partners are EP Village Green Owner, LLC, and Village Green II, General

5

Partnership. The Debtor acknowledged the Assignment of Leases through the signature of its general partners, but appears to have no obligations whatsoever vis-a-vis the Assignment of Leases. No proof was offered to the Court to explain how the Debtor might be obligated thereunder, through its general partners or otherwise. There may be documents which explain why EP Village Green Operator, LLC, executed the Assignment of Leases instead of the Debtor, but there was no testimony or argument to this effect at the hearing on this matter. Counsel for Fannie Mae stated at the hearing that the assignment language in the Assignment of Leases was exactly the same as the Deed of Trust and could be analyzed in identical fashion. While the language may indeed be the same, the Assignment of Leases was executed by a non-debtor entity (as "Assignor") who may not be subject to the Court's jurisdiction. The Court will limit its analysis and accordingly, focus on the language of the Deed of Trust.

### III. DISCUSSION

11 U.S.C. § 541 provides that "(a) The commencement of a case...creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case....(6) Proceeds, product, offspring, rents, or profits of or from property of the estate...." This provision was intended to be broadly construed. *Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 600 (6th Cir. 1991), citing *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-205, 103 S.Ct. 2309, 2313 (1983)(clear legislative history was provided by the Senate and House Report on the Bankruptcy Reform Act of 1978).

The "cash collateral" which the Debtor seeks to use to reorganize is defined in 11 U.S.C. § 363(a) as:

> *"cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest....whether existing before or after the commencement of a case under this title."* (emphasis added).

According to the Code, then, property cannot be cash collateral unless it is also property of the estate. *In re Kingsport Ventures,* 251 B.R. 341, 845-846 (Bankr. E.D. Tenn. 2000).

Further, 11 U.S.C. § 363(c)(2) provides that "The trustee may not use, sell or lease cash collateral...unless- (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." "The ability to use cash collateral under § 363(c)(2) extends to the Debtor by virtue of 11 U.S.C.A. § 1107(a) which endows a Chapter 11 debtor in possession with 'virtually all of the rights and powers of the bankruptcy trustee...'." *Id.*, citing *United States v. Hunter (In re Walter),* 45 F.3d 1023, 1027 (6th Cir. 1995). Because Fannie Mae has not heretofore consented to the use of cash collateral, the Court must determine if such cash collateral is property of the estate and therefore available here for the Debtor's use, so long as the other provisions of § 363 are complied with, including the adequate protection required by § 363(e).

The Debtor bears the initial burden of proof as to the issue of "adequate protection." 11 U.S.C. § 363(p)(1). At the hearing, the Debtor offered the testimony of Mr. Eric Clauson, a minority owner of the Debtor and employee of the asset management firm that manages the Debtor's real property. The Court found Mr. Clauson to be a credible witness whose testimony was very valuable by way of explaining the course of dealing between Fannie Mae and the Debtor.

7

Mr. Clauson testified that upon the purchase of the property in 2005, the Debtor immediately improved its profitability. Fannie Mae had initially required a significant reserve fund to be maintained until certain performance targets were met by the Debtor. The Debtor met its performance targets and the reserve fund was released. The property performed well financially until early 2009, when the area was impacted by an economic downturn which left many of the Debtor's tenants unemployed. Along with the increase in the number of non-paying tenants, the Debtor found that the process of evicting tenants for non-payment of rent was taking longer in the court system. These circumstances led to significantly lower collections for the Debtor and the Debtor's cash flow suffered accordingly.

In the meantime, the surrounding geographical area was deteriorating with a number of surrounding properties foreclosed upon and auctioned off. The Debtor then made a concerted effort to improve both collections and raise occupancy rates and saw improvements on a steady month-by-month basis. At the time of the hearing, the Debtor's occupancy rate was between eighty-eight and ninety per cent. The Debtor is now able to make its monthly mortgage payments and has surplus funds available for repairs.

According to Mr. Clauson's testimony, that the Debtor made an effort to resolve the default with Fannie Mae prior to filing the bankruptcy petition, but Fannie Mae had refused to negotiate with the Debtor. While Fannie Mae did send a "pre-negotiation" letter to the Debtor, Fannie Mae never engaged in discussion with the Debtor other than to provide the amount necessary to bring the loan current and to state that it was Fannie Mae's intention to foreclose on the property. Fannie Mae also accused the Debtor of failing to maintain the property without ever having performed an inspection. Conversely, Mr. Clauson testified that the Debtor had made meaningful improvements

to the property such as replacing siding, repairing the roofs and repainting and renovating the property's clubhouse.

Mr. Clauson testified that the Debtor has positive cash flow, that the real property is being maintained and is insured, that the real property's occupancy level has been brought up to a profitable percentage, and that the Debtor can now pay the regular ongoing note payments to Fannie Mae. Fannie Mae offered no testimony or other proof to the contrary. The Court finds that the Debtor has established a prima facie case that, if the rents are found to be available as cash collateral, Fannie Mae will be adequately protected. "Once a prima facie case is established, the objecting party must come forward with sufficient evidence to controvert that which was adduced by the moving party." *In re Carbone Cos., Inc.,* 395 B.R. 631, 637 (Bankr. N.D. Ohio 2008). Fannie Mae offered no additional evidence at the hearing other than the facts set forth in the Joint Stipulation and the supporting documents attached thereto. Docket No. 58, Ex. 1-13.

Fannie Mae argues that because the rents were subject to a pre-petition absolute assignment, they were not property of the estate. "[A]n absolute assignment divests the assignor of any legal right in the subject property as of the date of the assignment and vests those rights in the assignee." *In re Kingsport Ventures,* 251 B.R. 841, 848 (Bankr. E.D. Tenn. 2000). The assignor's equitable rights in the property are subordinate to the rights of the assignee. *Id., see also In re Harbour Town Assocs., Ltd,* 99 B.R. 823, 824 (Bankr. M.D. Tenn. 1989) It is Fannie Mae's position that because ownership of the rents was already totally vested with Fannie Mae, the Debtor had no interest in the rents which could become property of the estate upon commencement of the case as set forth in 11 U.S.C. § 541.

The Court also has before it the motion of Fannie Mae requesting relief from the automatic

stay "so that it may exercise any and all rights in the property. Docket No. 37, ¶ 32. 11 U.S.C. § 362 (a) provides that the filing of the Debtor's petition operates as a stay of various actions against the Debtor and property of the estate. Fannie Mae has requested that the Court lift the stay pursuant to 11 U.S.C. § 362(d)(2) because the Debtor has no equity in the property and such property is not necessary to an effective organization. Because the parties here have conceded that there is no equity in the property, the burden has shifted to the Debtor to show that the collateral is necessary for an effective reorganization. Joint Stipulation of Facts, Docket No. 58, ¶ 22. 11 U.S.C. § 362(g) provides that "In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section - (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and  (2) the party opposing such relief has the burden of proof on all other issues."

"What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means...that there must be "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.,* 484 U.S. 365, 108 S. Ct. 626 (1988).[1]

## A. THE LAW REGARDING ASSIGNMENTS OF RENTS

As one scholar has put it, "[t]he law regarding assignments of rents has been in great disarray

---

[1] While the Debtor has stipulated that this is a "single asset real estate" case (and thus subject to the provisions of 11 U.S.C. § 362(d)(3)), Fannie Mae has not requested relief pursuant to that provision and the 90-day deadline from the entry of the order for relief has yet to expire. *See also Kingsport Ventures,* 251 B.R. 841, 846 n.4 (Bankr. E.D. Tenn. 2000).

for more than a century."[2]  As early as 1807, security interests in rents were first recognized in the United States.  In 1830, a Deed of Trust was recorded which allowed the Trustee to take possession of the property and collect rents and profits upon default. *Id.*

Early Tennessee case law demonstrates the progressive complexity in creating and perfecting security interests in rents as well as the assignment of rents.  As early as 1880, the general rule in Tennessee was that absent a contractual provision, a mortgagor in possession was entitled to rents. *Moore v. Knight,* 74 Tenn. 427, 1880 WL 4749 (Tenn. 1880).  At that time, even after default, a mortgagee could only collect rents upon the showing that a sale of the real property would not be sufficient to repay the underlying obligation. *Id*. at *7.

By 1883, the general law of mortgages in Tennessee had developed sufficiently so that there existed certain "rules" applicable to all rents cases,

> "1.  That '[a] trustee holding legal title to land under a deed of trust to secure creditors, but not in possession, is not entitled to the rents, nor can the same be attached by the beneficiary for the payment of his debt.'  2.  That '[r]ents accruing after execution of the mortgage, and before sale, in absence of contract as to same, belong to mortgagor.'  3.  'That in Tennessee the mortgage is always treated as mere security for the debt, and when the mortgagee is out of possession, it is the *corpus* of the property, not its rents and profits, which constitute the fund for the satisfaction of the debt.'  4.  That '[a] mortgagee has no specific lien upon the rents and profits of the mortgage land unless he has in the mortgage stipulated for a specific pledge of them as part of his security.'  5....'[A] mortgagee, as against the mortgagor in possession, or those deriving title under him

---

[2] Julia Patterson Forrester, *Still Crazy After All These Years: The Absolute Assignment of Rents in Mortgage Loan Transactions,* 59 Fla. L. Rev. 487 (2007), later declaring that "The absolute assignment of rents is not a satisfactory method of creating a security interest in rents.  It causes problems for lenders in drafting and enforcing the assignment of rents.  It causes injustice for borrowers in bankruptcy.  It causes unnecessary litigation that may raise the cost of credit.  It is , nevertheless, the best alternative for lenders at this time.  The absolute assignment of rents cannot simply be eliminated unless replaced by a workable solution to the problems it solves.  Therefore, comprehensive change is necessary.  This change has occurred gradually in some states through the judicial process, but the legislative process provides a faster and more comprehensive solution." *Id.* at 524.

> subsequent to the mortgage, is not entitled to a receiver of rents *pendente lite*.' *Cowan, McClung & Co., v. Gill,* 79 Tenn. 674, 1883 WL 3775 at *6 (Tenn. 1883)(emphasis in original).

During its later term in 1883, the Tennessee Supreme Court re-emphasized the importance of the mortgage's terms in defining the rights of the parties. "[I]n this State, it has been invariably held that the legal title to the property conveyed vests in the mortgagee, and he is entitled to the immediate possession, unless the mortgage otherwise provides." *Lincoln Savings Bank v. Ewing,* 80 Tenn. 598, 1883 WL 3867 at *1 (Tenn. 1883). The court later stated that there had not been a reservation in favor of the grantor for possession and use of the property in the mortgage deed and as such, the mortgagee was entitled to request appointment of a receiver before default to protect the property. *See also Reed Fertilizer Co., v. Thomas,* 37 S.W. 220, 221 (Tenn. 1896)(absent a provision for possession, rents pass to the grantee upon execution of the instrument, prior to default.)

Later cases provided additional protection to a mortgagor-in-possession. In *Schoolfield v. Cogdell,* 113 S.W. 375 (Tenn. 1908), a mortgagor remained in possession of the land and the court found that where nothing appeared in the instrument to permit the trustee to collect rents, it followed that the rents from the property belonged to the mortgagor.

A mortgage given by a business that included income and profits, but where there was a right to enjoyment reserved until default, was held to not pass rights to income and profits to the trustee until after default and possession by the trustee. Even then the lien only attached to the income and profits arising after default and possession were taken. *Morgan Bros. v. Dayton Coal & Iron Co., Ltd.,* 183 S.W. 1019, 1013 (Tenn. 1916).

By 1927, the general rule had developed that if the mortgagor remained in possession of the property, a conveyance which included income, rents and profits would not be effective until default.

Any exceptions to the rule would have to be found stipulated by the parties to the mortgage. *Bank of Commerce and Trust Co.,* 290 S.W. 990 (Tenn. 1927).

Bankruptcy Courts in Tennessee have relied upon state law for guidance as to the effect of assignment of rents on Chapter 11 debtors and their lenders. Absent an express assignment of rents, a bankruptcy court will not find that a mortgagee has a lien on or security interest in rents. In such a case, if a grantor is in possession of the real property, the grantor, not the creditor will be entitled to the rents until foreclosure. *In re Crabtree,* 51 B.R. 521 (Bankr. E.D. Tenn. 1985)(citations omitted).

"An absolute assignment of rents would not be a pledge and would be superior to the mortgagor and third party creditors." *In re Harbour Town Associates, Ltd.,* 99 B.R. 823 (M.D. Tenn. 1989). It is obvious from the historical progression of Tennessee law that courts analyzing issues regarding security interests and assignments of rents must look closely at the language of the underlying documents.

The Court acknowledges that its opinion may not bring greater order to the disarray but will endeavor to take a pragmatic approach, taking into account the ramifications of such assignments on bankruptcy law and policy as well as the interpretation of transactional documents in Tennessee.[3] Even within this district, courts have reached differing results in their assignment analysis, although every analysis is dependent on the consideration of the totality of the particular facts and circumstances before the court. *E.g., In re 460 Tennessee Street, LLC,* No. 09-2816(Bankr. W.D.

---

[3] "The better-reasoned bankruptcy opinions look to the substance of the transaction and to factors such as the borrower's right to collect rents until default, the lender's obligation to apply rents to payment of the debt, and the termination of the assignment of rents upon payment of the loan in full. If the borrower has any remaining property rights in the rental stream under state law, bankruptcy law dictates that the rental stream be treated as part of the bankruptcy estate." Julia Patterson Forrester, *Still Crazy After All These Years: The Absolute Assignment of Rents in Mortgage Loan Transactions,* 59 Fla. L. Rev. 487, 522 (2007).

Tenn. Nov. 5, 2009), http://www.tnwb.uscourts.gov/opinions/jdl/pdf/jdl20091105nn1.pdf.*; In re 5877 Poplar, L.P.,* 268 B.R. 140, 149 (Bankr. W.D. Tenn. 2001). For every court, "[t]he determination of whether an assignment of rents is absolute or merely a pledge of security requires a thorough analysis of the language and provisions of the assignment." *Id.*

In addition, the Court is mindful that Chapter 11 reorganizations are intended to allow businesses to continue to operate, provide employees with jobs, pay creditors and produce a return for stockholders. Congressional policy favors reorganization because "[i]t is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets." *In re White Motor Credit Corp.,* 37 B.R. 631, 637 (D.C. Ohio, 1984), citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6179.

## B. ANALYSIS OF THE DEED OF TRUST

The Deed of Trust in this matter provides that it is governed by the laws of the jurisdiction in which the land is located, i.e. Tennessee. See Joint Stipulation of Facts, Docket No. 58, ¶ 2. Further, questions about what constitutes property of the estate are determined according to state law. *Butner v. United States,* 440 U.S. 48, 54-55, 99 S.Ct. 914, 918 (1979).

"Under Tennessee law an assignment of rents is presumed to be a pledge of rents as security." *In re Harbour Town Assocs., Ltd.,* 99 B.R. 823 (Bankr. M.D. Tenn. 1989). Such presumption is rebuttable, however, by proof that the assignment of rents was an absolute assignment rather than a pledge of security. *In re Kingsport Ventures,* 251 B.R. 841 (Bankr. E.D. Tenn. 2000).

In examining the language of the purported assignment, the court will apply general principles of Tennessee contract law. *Id.* at 847. Written contracts whose terms are plain and

14

unambiguous should be enforced according to their plain terms. *Vargo v. Lincoln Brass Works, Inc.,* 115 S.W.3d 487, 494 (Tenn. Ct. App. 2003). This rule applies, even where the terms seem harsh or unjust absent proof of fraud or mistake. Ambiguity results when contract terms may fairly be understood more ways than one. Language which is ambiguous is construed against the drafter. *In re 5877 Poplar, L.P.* at 147 (citations omitted). "When a particular contractual provision is ambiguous, the 'rule of practical construction' permits the courts to use the contracting parties' conduct and statements regarding the disputed provision as guides in construing and enforcing the contract." *Vargo v. Lincoln Brass Works, Inc*. at 494.

There can be no doubt that the form "Multifamily Deed of Trust, Assignment of Rents and Security Agreement" was meant to be a "one size fits all" agreement which would somehow simultaneously serve as an absolute assignment of rents and, alternatively, serve as a security agreement. Upon careful analysis, however, the Court finds that in consideration of the totality of the facts and circumstances before the Court, the Court concludes that the Deed of Trust is in reality a pledge of security, not an absolute assignment.

The first page of the Deed of Trust contains the following recitation: "[Debtor], in consideration of the Indebtedness and the trust created by this instrument, irrevocably grants, conveys, bargains, sells, confirms and assigns to Trustee, in trust, with power of sale, the Mortgaged Property [which in this instance includes Rents], including the Land...TO SECURE TO LENDER the repayment of the Indebtedness evidenced by Borrower's Multifamily Note..."(emphasis in the original). Joint Stipulation of Facts, Docket No. 58, Ex. 2, p. 1.

The Deed of Trust provides that the Rents are included in the pledged collateral in some sections and conversely absolutely assigned to the Lender in other provisions. "Mortgaged

15

Property" is defined to include "all Rents and Leases". Joint Stipulation of Facts, Docket No. 58, Ex. 2, Sec.1,¶ (s)(10) p.5. Section 3, "Assignment of Rents; Appointment of Receiver; Lender in Possession," states in paragraph (a) that "For purposes of giving effect to this absolute assignment of Rents, and for no other purpose, Rents shall not be deemed to be a part of the "Mortgaged Property," as that term is defined in Section 1(s)." The Court finds that these two provisions cannot be harmonized for purposes of its analysis. Further adding to the ambiguity as to whether the rents are "Mortgaged Property" or not, the UCC-1 filed by Fannie Mae on June 6, 2006 includes "All rents..." in its collateral description. See Joint Stipulation of Facts, Docket No. 58, Ex. 10.

Additionally, *within the Deed of Trust itself*, it is acknowledged that the rents may or may not be absolutely assigned. Section 3, Paragraph (a) states "However, if this present, absolute and unconditional assignment of Rents is not enforceable by its terms under the laws of the Property Jurisdiction, then the Rents shall be included as a part of the Mortgaged Property and it is the intention of the Borrower that in this circumstance this Instrument create and perfect a lien on Rents in favor of Lender, which lien shall be effective as of the date of this Instrument." It is impossible from the terms of the contract to know which legal position the parties were relying upon. One party to the contract could understand that there was an unconditional assignment of rents while the other could understand that a security interest was granted because in Tennessee, the legal presumption is that the parties intended to create a security interest. An ambiguity is created by the language of the contract which attempts to encompass both an absolute assignment and a security interest.

Section 3, Paragraph (b) states that until default, Fannie Mae granted to Debtor a "revocable license to collect and receive all Rents..." and at the same time so long as "no Event of Default has occurred and is continuing," all rents remaining after making payments then due and payable could

16

be retained by Debtor "**free and clear of, and released from** [Fannie Mae's] rights with respect to Rents under this Instrument,"(emphasis added). The Debtor apparently retained complete ownership of any funds collected, over and above the continuing monthly payments due under the Note and other loan documents. This provision is contrary to Section 3, Paragraph (a) which states that "Borrower absolutely and unconditionally assigns and transfers to Lender all Rents. It is the intention of Borrower to establish a **present, absolute and irrevocable transfer** and assignment to Lender of all Rents..."(emphasis added).

Like the contract in the *5877 Poplar, L.P.* case, the Debtor here retained some interest in the rents. The Debtor retained an interest in the surplus funds generated after payment of monthly obligations, as well as after the Note is paid in full. See Joint Stipulation of Facts, Docket No. 58, Ex. 2 Sec. 44. RELEASE, p. 34, "Upon payment of the Indebtedness, Lender shall release this Instrument."

Fannie Mae urges the Court to review the Deed of Trust in light of the four-factor reasoning of the court in the *Kingsport Ventures* case. *See Kingsport Ventures, 251 B.R. at 848.* The case *sub judice* can be distinguished from the *Kingsport* case from the outset. In *Kingsport*, the court found that the absolute assignment language was clear and unambiguous. For the reasons set forth herein, the court has found that not to be the case with the Deed of Trust in question. Further, in this case, the Debtor retained an interest in monthly rent surplusage as well as upon payment of the entire indebtedness.

In the analysis of the assignment language, "statements within the assignment that the assignment was intended to secure a debt is strong evidence that the assignments are in fact a pledge of security, even if the assignment is referred to as "absolute." *In re Kingsport Ventures*, 251 B.R.

841, 847 (Bankr. E.D. Tenn. 2000), citing *BVT Chestnut Hill Apartments, Ltd.* 115 B.R. at 117. In conducting its analysis, the Court must look to the reality of this particular transaction's structure, regardless of the "absolute" label that has been placed upon it.

Historically, there is support for giving effect to the realities of the underlying transaction despite the form placed on it by the parties. Prior to the codification of Tennessee's current version of the Uniform Commercial Code, there was much confusion created by agreements which were secured sales "disguised" as leases. [4] In analyzing these agreements, courts looked to the substance of the transaction between the parties, regardless of the form. "The agreement creating a security interest can be in any form - sale, consignment, lease, bailment or whatever the parties can imagine. The agreement need not say that it is granting a security interest. The practical effect of the agreement determines whether it was intended to create a security interest." *In re Village Import Enterprises*, 126 B.R. 307, 309 (Bankr. E.D. Tenn. 1991).

Hon. Ronald Lee Gilman, writing for the Sixth Circuit Court of Appeals, when determining whether separation agreement payments were alimony or really a "disguised property settlement" aptly stated, "There is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, then it is probably a duck." *Sorah v. Sorah (In re Sorah),* 163 F.3d 397, 401 (6th Cir. 1998). In Tennessee, the similar principle is stated as "[e]quity looks to substance and not to form," *Williams v. Burmeister,* 338 S.W. 2d 645 (Tenn. App. 1959).

Similarly, there is a longstanding Tennessee legal principle that even if a deed is labeled "absolute" on its face, if the actual circumstances dictate, the court will regard it as a mortgage. "If the instrument is in its essence a mortgage, the parties cannot by any stipulations, however express

---

[4] In 1993, Article 2A of the Uniform Commercial Code, applicable to leases, was adopted in Tennessee.

18

or positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity." *Harmon v. Faucette,* 8 Tenn. App. 137, 1928 WL 2092 (Tenn. Ct. App. 1928). Other bankruptcy courts have implemented similar state law principles in the assignment of rents analysis.

In *In re Willows of Coventry, Ltd.,* 154 B.R. 959, 963 (Bankr. N.D. Ind. 1993), the bankruptcy court applied the general principle that "if a conveyance is made as a security for money, in whatever form the conveyance is made, or whatever cover may be used to disguise the transaction and hide its real character from others...it will be held and treated as a mortgage." The court went on to find that the assignment of rents at issue was nothing more than a security device. "There is absolutely no reason this court can identify which would indicate that the Indiana courts would not apply these same fundamental principles to an assignment of rents, in connection with determining whether such an agreement constitutes an absolute conveyance or a lien." *Id*. at 964.

The instrument in that case, like the Deed of Trust here, stated on its face that it was made for the purpose of securing a contemporaneously executed note. Likewise, upon full payment of the note, the assignment would become void, similar to the release provision in both the Deed of Trust before this Court and the instrument in the *5877 Poplar* case, wherein the court commented, "Apparently, the Debtor did not assign its rights to the rents and revenues *ad infinitum* and retained some interest in the rents." 268 B.R. at 149.

Likewise, the court in *In re Buttermilk Towne Center, LLC*, 428 B.R. 700, 706 (Bankr. E.D. Ky. 2010) found that Kentucky state law, like Indiana law, supported a finding of substance over form. In Kentucky, even if a document states on its face that it is a deed of conveyance, courts will hold that it is a mortgage if it is a security for money. *Id.* at 706 (citation omitted). The instrument

19

in the *Buttermilk Towne Center* case, like the Deed of Trust under analysis here, also contained language that it served to secure payment on indebtedness and was of limited duration, becoming null and void upon payment of all outstanding amounts. *Id.* The Deed of Trust under consideration here has similar features to the assignments in the both the *Willows of Coventry* and *Buttermilk Towne Center* cases. The substance of the transaction as a whole, significant provisions of the Deed of Trust, and Tennessee case law support a finding that the assignment of rents in question is not an absolute assignment but in reality an assignment meant to secure the underlying obligation to Fannie Mae.

## IV. CONCLUSION

Based on a totality of the particular facts and circumstances, the stipulations and exhibits presented to the Court, witness testimony and arguments of counsel, the Court finds that Fannie Mae did not overcome the presumption that the assignment in question was in actuality a pledge of rents as security. As such, the court finds that the rents are property of the Debtor's estate and available for use as cash collateral.

Accordingly, Fannie Mae's Motion for Relief from the Automatic Stay (Docket No. 47) is hereby **DENIED**. Fannie Mae's Objection to the Debtor's Motion for Conditional Use of Cash Collateral (Docket No. 45) is hereby **OVERRULED**. Finally, for the reasons set forth herein, the Debtor's Motion for an Order Granting Adequate Protection Pursuant to 11 U.S.C. §§ 366 and 361 and Scheduling a Final Hearing Pursuant to Rule 4001 is **GRANTED**.

**This matter is scheduled for a final hearing on the motion to use cash collateral on August 12, 2010 at 9:30 a.m. in the U.S. Bankruptcy Court, 200 Jefferson Avenue, Room 680, Memphis, TN 38103.**